**PACIFIC LIFE INSURANCE COMPANY, Plaintiff,**

v.

**\*Terry SPURGEON, et al., Defendants.**

**No. SACV0400060JVSMLGX.**

United States District Court, C.D. California.

May 6, 2004.

David L. Bacon, John L. Viola, Thelen Reid & Priest, Los Angeles, CA, Frances S. Cohen, Kathleen N. Massey, Steven B. Feirson, Dechert, New York, NY, for Plaintiff.

Amelia F. Burroughs, John J. Stoia Jr., Susan Collyer, Timothy G. Blood, Lerach Coughlin Stoia & Robbins, San Diego, CA, Andrew S. Freidman, Frances J. Balint Jr., Bonnett Fairbourn Freidman & Balint, Phoenix, AZ, William J. Doyle II, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, for Defendant.

## MEMORANDUM OF DECISION

SELNA, District Judge.

On December 10, 2003, Illinois resident Terry Spurgeon ("Spurgeon") filed suit against Pacific Life Insurance Company ("Pacific Life") in Illinois state court asserting claims for common law negligence, gross negligence, bad faith, and breach of fiduciary duty arising out of the manner in which Pacific Life allowed market timers to trade in mutual funds offered under Pacific Life's variable annuity product. On January 16, 2004, Pacific Life removed the state court action to the United States District Court for the Southern District of Illinois. (Burroughs Decl., Ex. A.) Subse-quently, Pacific Life filed this action against Spurgeon, James Spurgeon, and Doe defendants (collectively, the "Spurgeons") "individually and on behalf of all others similarly situated." Pacific Life seeks a declaration that its practices did not violate a number of federal statutes nor breach common law duties alleged by Spurgeon in the state court action. (Complaint, ¶ 5.)

The Spurgeons bring the present motion asserting that this Court does not have jurisdiction over Pacific Life's claims, and if so, that the Central District of California is not the appropriate venue. (Motion, at 2.) The Court first considers the Spurgeons' motion to dismiss for lack of personal jurisdiction.

## I. Personal Jurisdiction

Pacific Life asserts that this Court has personal jurisdiction over the Spurgeons because nationwide jurisdiction applies with respect to three of Pacific Life's claims, while pendent jurisdiction supports the remaining claims. Moreover, Pacific Life argues that California's long-arm statute affords this Court jurisdiction because of the Spurgeons' contacts with the state. (Opposition, at 11–12.)

### A. Nationwide Service of Process

Pacific Life argues that nationwide personal jurisdiction over the Spurgeons exists under provisions in both the Securities Act of 1933 and the Securities Exchange Act of 1934, which provide that process "may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." 15 U.S.C. §§ 77v(a), 78aa. Specifically, Section 27 of the 1934 Act provides in part:

The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall

have exclusive jurisdiction of violations in this chapter or the rules and regulations thereunder, *and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or rules and regulations thereunder.* Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. *Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder ... may be brought in any such district or in the district wherein the defendant is found* or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa (emphasis supplied). Pacific Life contends that Ninth Circuit authority requires only minimum contacts with the United States as a whole in order to satisfy these provisions.

As demonstrated at oral argument, the authority for permitting nationwide jurisdiction of declaratory relief actions involving securities claims is scant, but not nonexistent, and there is no controlling authority at the circuit level, in the Ninth Circuit or elsewhere. The Court believes that there are two analytically distinct questions which need to be addressed: 1) Does Section 27's limitation to suits which "enforce any liability or duty" preclude subject matter consideration of a declaratory relief claim by the would-be defendant who by definition does not seek to enforce but to avoid liability? 2) Absent otherwise constitutionally sufficient contacts, does Section 27 permit a declaratory relief plaintiff to assert personal jurisdiction? The Court believes that the answer to both questions is "no."

### 1. Subject Matter Jurisdiction.

■ Several district court cases illustrate the sound logic of allowing a potential securities defendant the opportunity to litigate the legality of his conduct. In *Kansas City Power & Light Co. v. Kansas Gas & Electric Co.,* 747 F.Supp. 567 (W.D.Mo.1990), the plaintiff, Missouri-based Kansas City Power, had commenced a tender offer for Kansas-based Kansas Gas. By way of declaratory relief, Kansas City Power sought a decree from the Missouri district court that its tender offer disclosure document complied with Section 14D–1 of the Securities Exchange Act. In rejecting the argument that Section 27 could not be used for a declaratory suit, the court said:

> One purpose of the declaratory judgment procedure is to allow a party to anticipate an action that would be brought against it. If a declaratory judgment defendant could have brought an action in federal court to enforce its rights, then the federal court has jurisdiction over the declaratory judgment action brought by the plaintiff. In the instant case, it is clear that this court would have jurisdiction pursuant to section 27 if KG & E filed suit against KCP & L challenging the legality of KCP & L's Schedule 14D–1 because such a suit would be brought to "enforce a liability or duty created by the Exchange Act."

*Id.* at 572 (citations deleted). Similarly, the district court in *May Department Stores v. The Employees Retirement System of Alabama,* No. 93 Civ. 0879(JSM), 1993 WL 362389 (S.D.N.Y. Sept.14, 1993), rejected a standing attack premised on the view that only victims could invoke Section 27:

> A declaratory judgment action serves to allow a potential defendant to bring an action to ensure the prompt resolution of issues. Thus the Declaratory Judgment

Act confers standing on potential defendants to bring suit when they would not otherwise have standing.

*Id.* at *3. In terms of the logic behind declaratory suits, there is no reason to give the facially restrictive language in Section 27 literal application.

## 2. Personal Jurisdiction.

■ The Court believes that a different result is required where Section 27 is the sole basis for invoking personal jurisdiction in a securities case. The cases relied upon by Pacific Life are not entirely satisfactory in dispelling that view. For example, *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir.1991), states that personal jurisdiction was based on Section 27, but in fact the defendant "waived service of process." Thus, *Kidder, Peabody* is not instructive. Pacific Life cites *909 Corp. v. Village of Bolingbrook Police Pension Fund*, 741 F.Supp. 1290, 1291–92 (S.D.Tex.1990), for the proposition that personal jurisdiction was appropriate over an Illinois investor in a suit seeking a declaration of non-liability under Section 10 of the Securities Exchange Act because defendant lived in the United States. However, *909 Corp* simply assumes that if process is validly served, then it follows that personal jurisdiction exists. The issue here is not the validity of service, but whether the federal securities statutes allow one to borrow the service of process rules to assert personal jurisdiction for claims brought singularly under the Declaratory Judgment Act.

Although *Kansas City Power* nominally asserts that there was jurisdiction over the Kansas utility in Missouri under Section 27, the case also makes plain that there were sufficient contacts with Missouri to assert personal jurisdiction given that Kansas Gas was " 'found' in this district, in the sense of its presence and continuous local activity." 747 F.Supp. at 572. To be sure, the unpublished opinion in *May Department Stores* supports Pacific Life's position:

> It would defeat the purposes of the Declaratory Judgment Act to say that one may have standing to bring a declaratory judgment action on a '34 Act claim but one cannot utilize nationwide service to pursue its case. Particularly where, as here, all the defendants cannot be found within one district court's jurisdiction, to so hold would bar the declaratory plaintiff from bringing one suit to resolve the controversy in one action.

1993 WL 362389, at *3. This Court disagrees, and the district court in *May Department Stores* itself effectively disagreed by exercising its discretion to stay the action. (*Id.* at p. 4.) [1]

If the intent of the Securities Acts is to provide for the fullest prosecution of those statutes against alleged violators, it hardly serves those ends to allow the alleged violators the right to pick their victims and the time and place of their prosecution without regard to usual constitutional protections. As Pacific Life pointed out at oral argument, the case-and-controversy requirement would prevent it from haling into court any one of its far flung 374,000 active contract holders in the absence of a real dispute. (Teeter Decl., Ex. A.) But that view protects the quiescent, not the vocal, and as Pacific Life demonstrates,

---

**1.** Several cases extolling the national reach of Section 27 so long as there are minimal contacts with the United States do not advance the analysis. *Mariash v. Morrill*, 496 F.2d 1138, 1142–43 (2d Cir.1974), was not a declaratory relief action, and the plaintiff was indeed seeking to enforce a claim under the securities acts. *Bourassa v. Desrochers*, 938 F.2d 1056, 1058 (9th Cir.1991), is to the same effect ("[S]o long as defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any district court" (internal quotation marks deleted)).

active contract holders reside in virtually every state, the District of Columbia, and Puerto Rico. (*Id.*)

Because nationwide service provisions do not confer jurisdiction for a declaratory relief action, the Court has personal jurisdiction over the Spurgeons only if their contacts with the state of California are sufficient to support jurisdiction pursuant to California's long-arm statute.

## B. California's Long–Arm Statute

California's long-arm statute allows for jurisdiction within the limits of due process, and therefore the sole inquiry is whether jurisdiction satisfies due process requirements. Cal.Code Civ. P. § 410. Pacific Life bears the burden of establishing that the Court has personal jurisdiction over the Spurgeons. *AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir.1996).

■ The Ninth Circuit's due process test applies the familiar "minimum contacts" standard set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and thus examines the contacts between the defendant and the forum state. *Dole v. Watts,* 303 F.3d 1104, 1110 (9th Cir.2002). *International Shoe* and its progeny establish a two-prong test for whether the exercise of jurisdiction comports with due process. The primary inquiry is aimed at whether or not the defendant's contacts with the forum are continuous and systematic such that due process permits the exercise of general jurisdiction. *See, e.g., LSI Indus. Inc. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1375 (Fed.Cir.2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). The second inquiry relates to whether the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Here Pacific Life concedes that there are insufficient contacts to assert general jurisdiction over the Spurgeons. Those contacts were limited to the payment of administrative and annual fees from time to time and two account transfers executed by contacting Pacific Life. It is undisputed that Terry Spurgeon purchased his annuity in Illinois. (Terry Spurgeon Decl., ¶¶ 3–5.)

Absent general jurisdiction, due process requires that the Spurgeons have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154. Specific jurisdiction is appropriate where: (1) the defendants purposefully availed themselves of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws; (2) plaintiff's claims arise out of defendants' California-related activities; and (3) exercise of jurisdiction would be reasonable. *Lee v. City of Los Angeles,* 250 F.3d 668, 692 (9th Cir.2001).

### 1. Purposeful Availment.

■ The majority of the California-related activities asserted by Pacific Life were carried out by Pacific Life-in particular, Pacific Life's management of the fund and transfer of funds-and not by the Spurgeons. (Complaint, ¶¶ 12, 20.) The Court finds that the terms of the contract are not sufficient to place the Spurgeons, who are consumers and not merchants, on reasonable notice that they could expect to be called into court in California. As the Supreme Court observed in *Burger King,* "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient mini-

mum contacts in the other party's home forum, we believe the answer is that it cannot." *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174 (italics in original). The Spurgeons' actual contacts were minimal, and James Spurgeon's virtually non existent.

At oral argument, Pacific Life stressed the factual similarities between this case and *Burger King*. However, the Court believes that the dissimilarities in fact predominate. In *Burger King*, the Michigan franchisee had "entered into a carefully structured 20–year relationship that envisioned continuing and wide-ranging contacts with Burger King in Florida." 471 U.S. at 480, 105 S.Ct. 2174. When disputes arose, there was "a continuous course of direct communications [with the Miami headquarters] by mail and by telephone, and it was the Miami headquarters that made the key negotiating decisions out of which the instant litigation arose." *Id.* at 481, 105 S.Ct. 2174. The present case is totally lacking in *Burger King*'s trappings of a sophisticated business transaction characterized by an "interdependent relationship" imposing "exacting regulation of virtually every conceivable aspect of their operations." *Id.* at 465, 482, 105 S.Ct. 2174. Here, Terry Spurgeon's "friend and financial agent, Earl 'Si' Seibert," gave him a Pacific Life application, which he then submitted, and thereafter essentially proceeded as a passive investor. (Terry Spurgeon Decl., ¶¶ 3–7). While Pacific Life is correct that this is not a one-purchase case, and that the annuity contract created an ongoing relationship, the case is far removed from *Burger King*, and lacks sufficient contacts to create purposeful availment.

### 2. Arising out of California Contact.

While Pacific Life is correct that "but for" Terry Spurgeon's purchase of the annuity, the present dispute would not have arisen, the conduct which gives rise to the dispute is Pacific Life's. The Court finds the Spurgeons' contacts far below the level required to invoke personal jurisdiction. This element of the analysis is not satisfied.

### 3. Reasonableness

█ In determining whether or not the exercise of jurisdiction is reasonable, courts consider seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Dole*, 303 F.3d at 1114.

Pacific Life takes the position that "reasonableness considerations weigh so heavily in favor of jurisdiction that it may be exercised with a lesser showing of minimum contact than would otherwise be required." *See Haisten v. Grass Valley Med. Reimbursement*, 784 F.2d 1392, 1397 (9th Cir.1986). The Court has discussed the first factor and found that it weighs in favor of the Spurgeons. Further, the Court finds that Illinois' interest in adjudicating its citizens' dispute is just as strong as California's.[2] Obviously, the existence of

---

**2.** This position is somewhat undercut by the fact that the Spurgeons are now asserting claims under California Business & Professions Code, Section 17200 in their newly-filed action. *Spurgeon v. Pacific Life Insurance Company*, Circuit Court, Third Judicial Division, Madison County, Illinois, Cause No. 04L241, Count IV. That does not vitiate Illinois' interest in adjudicating the core Illinois state claims which its citizens are asserting there.

an alternative forum weighs in favor of declining jurisdiction.

However, the factors that weigh most heavily in favor of unreasonableness are the burden on the Spurgeons and the efficient resolution of the dispute. Here, the Spurgeons are residents of Moro, Illinois and claim that traveling to California to litigate a case would impose a substantial burden. (Terry Spurgeon Decl., ¶ 8; James Spurgeon Decl., ¶ 8.) Pacific Life's rebuttal that there is no such burden because the Spurgeons filed a nationwide class action and hired a California law firm is not sufficient to overcome this showing. It is one thing to hale a large corporation doing nationwide business into a foreign forum; it is another to hale two individuals with no contacts or *de minimis* contacts into a forum, regardless of who their counsel may be.[3]

At oral argument, Pacific Life stressed that it would be more efficient to resolve its claims in this forum. If efficiency is defined from Pacific Life's perspective, that is undoubtedly correct. Pacific Life contemplates a nationwide defendant class action which would resolve every conceivable claim pertaining to the pricing of its investments. However, it does not follow that Pacific Life can co-opt the Spurgeons' more limited Illinois claims by pleading a broader universe. To the extent that witnesses and discovery may make litigation more convenient in California, that issue can be addressed in a motion for change of

venue, assuming the Spurgeons' latest action is removed, or in a motion for a dismissal under the doctrine of *forum non conveniens*. *See Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 868 (9th Cir.2003).

Therefore, the Court finds that even if the Spurgeons had sufficient contacts to establish personal jurisdiction, exercising that jurisdiction would be particularly unreasonable in light of the burden placed on the Spurgeons.

The Spurgeons' motion to dismiss for lack of personal jurisdiction is therefore granted.

## II. Reactive Suit.

■ Assuming that Pacific Life could establish personal jurisdiction over the Spurgeons, the Court in its discretion declines to entertain what it deems a reactive suit, provoked by the Spurgeons' initiation of litigation in Illinois. As the Ninth Circuit has cautioned, "federal courts should generally decline to entertain reactive declaratory actions." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223–25 (9th Cir.1998) (*en banc*). Without necessarily adding a pejorative cast,[4] the present suit can be fairly characterized as "forum shopping," and multiplies rather than decreases the number of pending actions. These factors militate against the exercise of ju-

---

3. *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 867 (9th Cir.2003), does not compel a different result. There the Court noted minimal hardship where the foreign corporate defendant had already "retained a nationally recognized firm of highly capable and sophisticated American lawyers, with an office in California." *Id*. While that description might well fit the Spurgeons' counsel, factors other than counsel predominated in *Mattel:* The defendant's purposeful availment of California's court on the same subject mat-

ter previously was likely "enough by itself to support a conclusion that the exercise of jurisdiction over [the foreign defendant] is reasonable." *Id*. Moreover, the Spurgeons are not corporations, but two wage-earners from Moro, Illinois. (Terry Spurgeon Decl., ¶ 2; James Spurgeon Decl., ¶ 3.)

4. Pacific Life's arguments concerning the desirable qualities of the present forum can hardly be characterized as without substance.

risdiction. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495–96, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Moreover, the Court is not convinced that a number of Pacific Life's expressed efficiency goals could not be achieved in the Illinois suit, particularly if it is removed to federal court.

The Court has additional doubts whether there is subject matter jurisdiction here.[5] However, the Court does not reach the Spurgeons' remaining arguments because they are moot in light of the Court's rulings in Section I and II.

### III. Conclusion

The Spurgeons' motion to dismiss for lack of personal jurisdiction is granted. In the alternative, the Court declines to exercise jurisdiction over this declaratory relief action.

IT IS SO ORDERED.

---

**5.** Pacific Life attempts to invoke federal question jurisdiction based on Pacific Life's claims seeking declarations of non-liability under numerous federal securities provisions, where the Spurgeons have not asserted that Pacific Life is violating any of those provisions. However, where "but for the availability of the declaratory judgment procedure, the federal claim would only arise as a defense to a state created action, jurisdiction is lacking." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, § 2767 at 744–45 (2d ed.1983)). Moreover, Pacific Life's reliance on the cost of compliance with an adverse declaratory judgment on the Spurgeons' class claims is likely insufficient to establish the amount in controversy required to satisfy subject matter jurisdiction. *See In re Ford Motor Co./ Citibank, N.A.,* 264 F.3d 952, 960–61 (9th Cir.2001).